# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NASSER WASHINGTON,           )
                             )
        Plaintiff,        )
                             )
        v.                )    02:07cv0886
                             )
FAMILY LINKS and JUDY SHACKNEY, )
                             )
        Defendants.       )

## MEMORANDUM OPINION AND ORDER OF COURT

September 10, 2008

        Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendants, FamilyLinks and Judy Shackney (collectively "Defendants") (*Document Nos. 9 and 10,* respectively), and Plaintiff's brief in opposition (*Document No. 17*).

        The issues have been fully briefed and the matter is ripe for disposition. The factual record has also been thoroughly developed via DEFENDANTS' APPENDIX IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (*Document No. 9-2*), the STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (*Document No. 12*), the APPENDIX TO PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT MOTION (*Document No. 17*), and the PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS filed by Plaintiff (*Document No. 18*).

        After a careful consideration of Defendants' motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a

whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Nasser Washington, on his claims of racial discrimination. Therefore, for the reasons that follow, the Motion for Summary Judgment will be granted in its entirety.

## PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action on June 26, 2007, pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Specifically, Plaintiff contends that FamilyLinks and Judy Shackney retaliated and discriminated against him on the basis of his race, African American, by terminating his employment and/or by not recalling him when a subsequent employment vacancy arose.

Defendants have filed the instant motion for summary judgment in which they contend that Plaintiff is unable to establish a *prima facie* case on either his Title VII claim and/or his § 1981 claim.

## BACKGROUND

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff.

Defendant, FamilyLinks, is a non-profit social service agency that provides mental health and mental retardation programs, youth and family development programs, adult community services, alcohol and other drug treatment, and school-based prevention services to children, families, and individuals through southwestern Pennsylvania. The FamilyLinks Therapeutic Learning Center ("TLC") is a school for children ages four (4) through ten (10)

who have fairly severe emotional disturbances. The children's disabilities include attention deficit disorder, oppositional defiant disorder, depression, and autism.

Plaintiff, Nassar Washington, was hired by FamilyLinks as an "intervention specialist" in 2003, although his title changed to "mental health worker" in 2004. Prior to FamilyLinks, Plaintiff worked with challenging children with severe behavioral problems at Summit Academy, which serves adjudicated students grades 9 to 12.

Jeff Lawson, the then-Program Director who interviewed and hired Plaintiff in 2003, told Plaintiff that, based on his prior experience at Summit Academy, he would be hired specifically to work with the more behaviorially challenging children. Lawson also told Plaintiff that his race was a significant factor in his hiring as FamilyLinks was looking for an African-American male as a role model. More than ninety percent (90%) of the students at FamilyLinks' TLC are African American.

As promised by Lawson, Plaintiff was assigned the more behaviorally challenging students at TLC. As a mental health worker, Plaintiff's duties included observing students, counseling students about their behavior, and supporting the classroom teacher with students' behavioral problems.

In 2003, Plaintiff reported to Cathy Sullivan; during the 2004-2005 school year, he reported to Mental Health Manager Lisa Perkins; and during the 2005-2006 school year, he reported to Mental Health Manager Mia Tamburri. For approximately one and a half (1½) to two (2) months in 2004, Plaintiff acted as a teacher when the special education teacher in Plaintiff's classroom resigned. During this time, Plaintiff was supervised by then-Educational

Manager, Defendant Judy Shackney. This was the only time that Plaintiff was supervised by Defendant Shackney.

In 2003, there was a meeting with Stacy Dillon, a Caucasian teacher; Athena Ford, an African American mental health worker; Plaintiff, and two representatives from FamilyLinks' human resources department, Cathy Cicco and Trina Hill. The meeting was held to address the concerns of Ms. Dillon and Ms. Ford that they were not being treated fairly. Plaintiff, the mental health worker in Ms. Dillon's classroom, was invited to the meeting by Ms. Dillon and Ms. Ford.

During the meeting, Ms. Dillon complained about having personality differences with Jeff Lawson, the Program Director. Ms. Ford raised concerns that she was unfairly viewed because she was African American. During the meeting, Plaintiff was asked whether he believed there were racial issues at TLC. Plaintiff did not express, nor did he believe at that time that there were racial issues at the school. Plaintiff mentioned only that he thought that his classroom was treated differently by two teachers in the cafeteria.[1]

Plaintiff testified during his deposition, however, that because of an incident during the 2004-2005 school year, he began to believe that Defendant Shackney had an issue with respect to his race. One day in 2004-2005 school year, Plaintiff left work early (he did not recall if this incident occurred during the first or second semester of the 2004-2005 school year). He was later told by another mental health worker, Charlotte King, that after he had left,

---

[1] Plaintiff testified that the conflict in the cafeteria arose because of strained interactions between the students of the two teachers - students who were behaviorally ready to transition back to public schools - and Plaintiff's students, students who were not transitioning back to public schools, but were more "street wise" and behaviorally challenging.

4

one of his students started acting out. According to Plaintiff, Ms. King told him that Defendant Shackney made a comment regarding Plaintiff not doing his job properly because the child was uncontrollable. Plaintiff did not address the issue directly with Defendant Shackney, but e-mailed the then-CEO, Steve Grimshaw, and complained that he felt disrespected by Defendant Shackney's comment.

Plaintiff testified during his deposition that he thought Defendant Shackney's comment was made based on his race:

> To make a comment, if you're working hard with somebody all the time and you feel that you're doing the correct job, why would you make the comment, you know what I'm saying, that I viewed that - - I looked back on things and I said, you know what, what am I doing, is it because I'm a male, you know what I'm saying? Race, it can be anything at that point, but you do look back and reflect on things.

Pl's Depo. at 37-38.

Plaintiff further explained that he concluded Defendant Shackney's actions were because of his race, rather than his gender:

> Because when I looked back and I felt some of the things and how I felt like with some of the conversations I had with Jeff [Lawson], that maybe it is race, you know what I'm saying, because it is like I felt differently with the classroom, how my classroom was treated, how I felt I was treated, even the time that I was doing a piece - - where I was the mental health education worker, I was in the meeting with the teachers also, it was agreed upon that we were supposed to have weekly one on ones with Judy, I never got one.

Pl's Depo. at 38.

Plaintiff also testified during his deposition that he believed he did not have as many interactions with Defendant Shackney as did a Caucasian mental health worker, Jayson Gooch; however, Plaintiff admittedly did not initiate interactions with Defendant Shackney, as Mr. Gooch always did.

Plaintiff also testified that he was aware that several African-American employees felt that Defendant Shackney had problems with racial prejudice. Although Plaintiff admitted during his deposition that he was familiar with the FamilyLinks' grievance process, he never lodged a grievance of race discrimination against Defendant Shackney or anyone else at FamilyLinks. Further, Plaintiff never complained to anyone in the human resources department about Ms. Shackney.

Plaintiff also never complained about Defendant Shackney to Anthony Drane, Director of Education and Community Service and Defendant Shackney's supervisor, nor did he complain about Defendant Shackney to Fred Massey, the CEO of FamilyLinks who is African American. Additionally, Plaintiff never complained to his supervisor, Mia Tamburri, about Defendant Shackney.

In 2005, Ms. Tamburri, Defendant Shackney, and Lenard Prewitt, who is African American, believed there was a need for structured recreational activities at TLC and decided that the students would benefit from a recreational program. Mr. Prewitt thought that Plaintiff would be a natural person to work with the children in this new program and asked Plaintiff if he would be interested in teaching a physical education class. Plaintiff accepted the position and became the employee in charge of recreation, although according to Plaintiff his title remained "mental health worker" and he retained the duties of a mental health worker.

At the end of 2005, FamilyLinks experienced a "reduction in revenues" when Pittsburgh Public Schools reduced the number of students it would send to FamilyLinks. Specifically, Pittsburgh Public Schools reduced the number of student spaces that it would purchase from FamilyLinks from 37 students to 25 students, which resulted in a revenue deficiency for TLC of about $180,000.

As a result of the funding cutback, in December of 2005, FamilyLinks determined that it had to eliminate the smallest TLC classroom and place those students in other classes. Sara Watkins, a Caucasian female who was teaching the eliminated classroom, was laid off. The mental health worker in that classroom, Kathy McCabe, Caucasian, was reduced from full-time to part-time status.

Plaintiff attended a meeting in which the financial dilemma of FamilyLinks was discussed. According to Plaintiff, one of the management persons at the meeting made a statement that future layoffs would be conducted according to seniority. However, during his deposition, Plaintiff was not able to identify who made the statement.

Throughout the 2005-2006 school year, FamilyLinks attempted to alleviate the budget problems by pulling in extra revenue through referrals and spending less. FamilyLinks also did a marketing campaign in efforts to attract more sources of funding. In order to reduce the deficit, FamilyLinks also attempted to increase their use of interns and reduce purchasing supplies to the absolute minimum.

In 2006, Mr. Drane decided that due to budgetary constraints, TLC would have no choice but to make further staff reductions. Mr. Drane reviewed the bare minimum staffing that TLC could maintain and still meet regulatory requirements and determined that in order for

TLC to remain in regulatory compliance it needed on educator and one mental health worker in each classroom. At the time, TLC had four classrooms, four teachers, and six mental health workers, including Plaintiff, who was still in charge of recreation, and Kathy McCabe, the part-time mental health worker.

Mr. Drane met with Ms. Tamburri and Defendant Shackney regarding the positions which would be the most logical to eliminate given the needs of the school. It was decided that the recreation position held by Plaintiff and the part-time mental health worker position held by Kathy McCabe, would be the two positions that would be eliminated.

In August, 2006, at the end of the 2005-2006 school year, Ms. Tamburri and Defendant Shackney informed Plaintiff that his position was being eliminated. In that meeting, Ms. Tamburri and Ms. Shackney explained to Plaintiff why his position was being eliminated, and, according to Plaintiff told him "if anything opened up, that we'll give you a call." Plaintiff did not apply for any jobs at FamilyLinks after his employment was terminated.

Approximately one week to ten days after Plaintiff left TLC, Nivea Greene, a mental health worker, voluntarily resigned from TLC. Neither Ms. Tamburri nor Defendant Shackney called Plaintiff regarding the vacancy. TLC eventually hired Tim Kamauf, a Caucasian male, to fill the vacancy left by Ms. Greene's resignation. Plaintiff testified that the position of recreational supervisor has not been filled since his position was eliminated.

## DISCUSSION

As stated above, Plaintiff claims that Defendants discriminated against him on the basis of his race by terminating his employment and/or by not recalling him when a subsequent employment vacancy arose. Defendants respond that their decision to terminate Plaintiff's

employment was based on legitimate, nondiscriminatory reasons.  The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 526-27 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).

As an essential element of his Title VII or Section 1981 race discrimination claims, Plaintiff must establish a *prima facie* case.[2]  To establish a *prima face* case of discrimination under Title VII or Section 1981 in a "reduction in force case," the employee must show that (i) the employee is a member of a protected class, (ii) the employee was qualified for the position in question, (iii) the employee was terminated, and (iv) individuals not within the protected class were retained.  *Lepore v. Lanvision Sys., Inc.*, 113 Fed. Appx. 449, 452 (3d Cir. 2004).  "In a reduction in force case, the persons outside the protected class are those employees who are 'similarly situated,' that is, they work in the same area in approximately the same position."  *Id.*  (affirming judgment entering summary judgment in employer's favor as to Title VII gender discrimination claim in reduction in force case, as plaintiff did not establish that employer retained similarly situated employees outside protected class in plaintiff's department).  Thus, a court's ultimate task in a race discrimination case is to determine whether the plaintiff has carried his burden of showing, by a preponderance of the evidence, that the employer intentionally discriminated against him.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632,

---

[2] Because "the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim," *Schurr v. Resorts Intern. Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999), and because Plaintiff seeks to prove his claims through indirect or circumstantial evidence, the Court applies the same standard and analysis to review both claims, i.e., the familiar burden-shifting analysis as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See also Jones v. School District of Philadelphia,* 198 F.3d 403, 410 (3d Cir. 1999).

637 (3d Cir. 1993); *see Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 179 (3d Cir. 1985) ("[A] plaintiff must show that his status as a minority class was the but for reason for the treatment accorded."), *cert. denied*, 475 U.S. 1035 (1986).

In a Title VII lawsuit, the familiar *McDonnell Douglas* formulation[3] regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment. Accordingly, the plaintiff bears the initial burden of presenting a *prima facie* case. Should the plaintiff make this showing, a presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its decision. *Fuentes*, 32 F.3d at 763; *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990).

The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory purpose. *Fuentes*, 32 F.3d at 763. If the defendant is able to clear this relatively low hurdle, the presumption evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing that a discriminatory purpose was a determinative factor in the decision. *Id*. at 764; *Bellissimo*, 764 F.2d at 179-80. The plaintiff can either prove this directly, by showing that discriminatory considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence. *Josey*, 996 F.2d at 638; *Weldon*, 896 F.2d at 797.

At trial, a Title VII plaintiff must prove both that the employer's reason was false and that discrimination was the real reason for the discharge. *Fuentes*, 32 F.3d at 763. However,

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the Court of Appeals for the Third Circuit has held that the plaintiff's burden is not as onerous when attempting to survive a summary judgment motion. In such situations, the plaintiff need only demonstrate that there are disputed factual issues concerning either (1) whether the proffered reason for the discharge is false, or (2) whether an invidious discriminatory reason was more likely than not a motivating or determinative cause for the discharge. *Torre v. Casio, Inc.,* 42 F.3d 825, 830 (3d Cir. 1994); *Fuentes*, 32 F.3d at 764.

In the instant case, it is undisputed that Plaintiff is a member of a protected class, that he was qualified for his former position, and that he was subjected to an adverse employment action when he was terminated despite his qualifications.[4] However, the Court finds and rules that Plaintiff has failed to establish a *prima facie* case with respect to his termination because he has not produced evidence to show that the decision to terminate him "raises an inference of discriminatory animus." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). Because Plaintiff is arguing that the decision to terminate his employment during the forced reduction was discriminatory, he bears a heavy burden to create an inference of discrimination. See *Hook v. Ernst & Young*, 28 F.3d 366, 375 (3d Cir. 1994) ("[A] plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." (*quoting Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991)).

---

[4] Although Mia Tamburri testified as to some concerns about Plaintiff's job performance, the record does not indicate that Plaintiff received any formal reprimands or warnings for performance deficiencies. Plaintiff's performance was considered above average in his evaluation for 2004-2005. The summary judgment record does not contain a 2005-2006 evaluation.

11

In this case, Defendants have offered evidence that the decision to terminate Plaintiff's employment was part of a forced reduction due to FamilyLinks experiencing a significant loss of revenue. Plaintiff does not dispute the following:

* that FamilyLinks experienced a "reduction in revenues" of about $180,000 and as a result of the funding problems, in December of 2005, FamilyLinks decided to eliminate its smallest classroom and place those students in other classes; (Stmt of Undisputed Fact, at ¶ 69);

* that Sara Watkins, a Caucasian female who was teaching the eliminated class, was laid off and the mental health worker in that classroom, Kathy McCabe, a Caucasian female, was reduced from full-time to part-time status; (*Id.* at ¶¶ 71 and 72);

* that throughout the 2005-2006 school year, FamilyLinks attempted to alleviate the budget problems by pulling in extra revenue through referrals and spending less; (*Id.* at ¶ 76);

* that in order to reduce the deficit, Family Links also attempted to increase its use of interns, and reduce purchasing supplies to the absolute minimum; (*Id.* at ¶ 78);

* that in 2006, Anthony Drane decided that due to budgetary constraints, TLC would have no choice but to make further staff reductions; (*Id.* at ¶ 79); and

* that Anthony Drane reviewed what was the minimum staffing that TLC could maintain and still meet regulatory requirements and decided that it would take one education and one mental health worker in each classroom to maintain regulatory compliance. (*Id.* at ¶¶ 80, 81).

The Court finds and rules that the summary judgment record is utterly devoid of any evidence which demonstrates that Plaintiff's race was a factor in the decision to terminate his

employment; rather Plaintiff relies upon his own "unsupported assertions, conclusory allegations, or mere suspicions." Mere speculation is not sufficient to establish a *prima facie* case of race discrimination. *See, e.g., Bailey v. Principi*, 2003 U.S. Dist. LEXIS 15538 at *19 (E.D. Pa. Aug. 20, 2003) ("[T]he plaintiff . . . must demonstrate the existence of sufficient facts to allow him to prove by a preponderance of the evidence that a prima facie case of discrimination exists that goes beyond the plaintiff's mere speculation.") *Bullock v. Children's Hosp. of Philadelphia*, 71 F. Supp. 2d 482, 490 (E.D. Pa. 1999) ("[T]he Plaintiff must prove by a preponderance of the evidence that a *prima facie* case of discrimination exists. It does not suffice to suggest the mere possibility of discrimination.") Significantly, Plaintiff never lodged any complaint with any of his supervisors or with the human resources department complaining of race discrimination.

Ultimately, Plaintiff cannot establish that any individual outside of his class was treated more favorably, and as such, his attempt to establish a *prima facie* case fails. The record is undisputed that in 2005 due to a reduction in resources FamilyLinks was forced to eliminate a classroom, lay off a Caucasian teacher, and decrease the hours of a Caucasian mental health worker. In 2006, Anthony Drane met with Judy Shackney and Plaintiff's supervisor, Mia Tamburri, and they decided to further eliminate positions which were not considered "essential" - Plaintiff's position - a recreational position - and the position of a part-time mental health worker position held by a Caucasian female, assigned to a classroom that already had the required number of staff.

Plaintiff's second argument that FamilyLinks should have recalled him after another mental health worker resigned also fails. It is critical to note that Plaintiff cannot establish that

13

FamilyLinks had either a duty to recall him following his termination, or that FamilyLinks had a practice of ever recalling mental health workers whose positions had been eliminated. Rather, FamilyLinks acted in accordance with its past practice, which was to post vacancies on its website. Notably, Plaintiff by his own admission did not re-apply for any position with FamilyLinks and did not look at the website but twice a month.

Moreover, Plaintiff cannot establish that he was treated less favorably than Ms. McCabe, the Caucasian mental health worker whose position was eliminated at the same time as Plaintiff's position was eliminated. Significantly, Ms. McCabe also was not recalled when a mental health worker position became available.

The Court finds and rules that Plaintiff has simply failed to present any evidence to show that race was a factor in Defendants' decision to terminate Plaintiff's employment and/or to not recall him when a subsequent employment vacancy arose. Accordingly, the Court will grant the summary judgment motion filed by Defendants on Plaintiff's Title VII claim.

However, assuming *arguendo* that Plaintiff established a *prima facie* case of discrimination, the Court would nevertheless grant summary judgment because the Court finds and rules that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendants' articulated nondiscriminatory reasons or (2) otherwise believe that an invidious discriminatory reason was more than not a motivating or determinative cause for Defendants' decision to terminate Plaintiff's employment or not to recall him. *See Fuentes*, 32 F.3d at 764.

As discussed *supra*, the summary judgment record reflects that the decision to terminate Plaintiff's employment was made only after FamilyLinks had a significant loss of

revenue and TLC determined that it could afford to operate only with the minimum number of required staff. Based on the totality of the undisputed record evidence, the Court finds that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendants' articulated nondiscriminatory reasons or (ii) otherwise believe that an invidious discriminatory reason was more than not a motivating or determinative cause for Defendants' decision to terminate Plaintiff's employment or not to recall him when a mental health worker position became available.

## Conclusion

For the reasons discussed *supra,* the Court finds that Plaintiff has not shown by any evidence that Defendant intentionally discriminated against him because of his race. Furthermore, in the alternative, the Court finds and rules that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendants' articulated nondiscriminatory reasons or (ii) otherwise believe that an invidious discriminatory reason was more than not a motivating or determinative cause for Defendants' decision terminate Plaintiff's employment or not to recall him when a mental health worker vacancy arose. Therefore, the Motion for Summary Judgment filed by Defendants will be granted in its entirety.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NASSER WASHINGTON,              )
                                )
        Plaintiff,     )
                                )
        v.             )      02:07cv0886
                                )
FAMILY LINKS and JUDY SHACKNEY, )
                                )
        Defendants.    )

## ORDER OF COURT

AND NOW, this 10th day of September, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed by Defendants FamilyLinks and Judy Shackney (*Document No. 9*) is **GRANTED** and judgment is hereby entered in favor of Defendants, FamilyLinks and Judy Shackney, and against Plaintiff, Nasser Washington.

                                        BY THE COURT:

                                        s/ Terrence F. McVerry
                                        United States District Court Judge

cc:      Edward A. Olds, Esquire
          Email: edolds@earthlink.net

          Robert B. Cottington, Esquire
          Cohen & Grigsby, P.C.
          Email: rcottington@cohenlaw.com

          Marie I. Rivera Johnson, Esquire
          Cohen & Grigsby, P.C.
          Email: mriverajohnson@cohenlaw.com